UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKEAL STINE,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF PRISONS,<br><br>    Defendant. | Case No. 1:13-cv-1883-AWI-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO:**<br><br>**(1) GRANT BUREAU OF PRISONS' REQUEST FOR JUDICIAL NOTICE (ECF No. 15-2);**<br><br>**(2) DENY BUREAU OF PRISONS' MOTION TO REVOKE PLAINTIFF'S IN FORMA PAUPERIS STATUS (ECF No. 15); AND**<br><br>**(2) DENY PLAINTIFF'S MOTION TO DECLARE 28 U.S.C. § 1915 UNCONSTITUTIONAL (ECF No. 16)**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

**I.  PROCEDURAL HISTORY**

    Plaintiff is a federal prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). The action proceeds on Plaintiff's First and

1   Eighth Amendment claims against John Does Nos. 1 and 2.

2   On January 23, 2015, the Federal Bureau of Prisons ("BOP"), by way of special
3   appearance, moved to revoke Plaintiff's in forma pauperis status. (ECF No. 15.) Along
4   with the motion, BOP filed a request for judicial notice. (ECF No. 15-2.) Plaintiff filed an
5   opposition. (ECF No. 17.) Defendants filed no reply.

6   Plaintiff also filed a motion to find applicable portions of 28 U.S.C. § 1915
7   unconstitutional. (ECF No. 16.) BOP opposed Plaintiff's motion. (ECF No. 18.) Plaintiff
8   filed no reply.

9   The matters are deemed submitted. Local Rule 230(*l*).

10  **II.    REQUEST FOR JUDICIAL NOTICE**

11  BOP asks the Court to take judicial notice of a printout from the PACER case
12  locator listing actions involving Plaintiff. (ECF No. 15-2.)

13  Federal Rule of Evidence 201(b)(2) authorizes the Court to judicially notice facts
14  not subject to reasonable dispute, including court records, because they may be
15  accurately and readily determined from sources whose accuracy cannot reasonably be
16  questioned. United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); Reyn's Pasta
17  Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). This includes the
18  Court's own records. Id. Such notice is mandatory where the requesting party supplies
19  the information to be noticed to the Court.  FRE 201(c)(2).

20  Judicial notice of the PACER records included in BOP's request is proper. Fed.
21  R. Evid. 201(b)(2). Accordingly, BOP's request should be granted.

22  **III.   MOTION TO REVOKE PLAINTIFF'S IN FORMA PAUPERIS STATUS**

23  On February 3, 2014, the Court granted Plaintiff's motion to proceed in forma
24  pauperis. (ECF No. 8.) BOP now seeks to revoke Plaintiff's in forma pauperis status on
25  the ground that he has brought three or more actions that were dismissed as frivolous,
26  malicious, or for failure to state a claim, and he was not in imminent danger of serious
27  physical injury at the time of filing. (ECF No. 15.) Plaintiff neither concedes nor contests
28  that he has at least three "strikes" under the Prison Litigation Reform Act, but argues

that he was in imminent danger at the time his complaint was filed. (ECF No. 17.)

The Court concludes it is beyond dispute that Plaintiff has incurred at least three "strikes" within the meaning of 28 U.S.C. §1915(g). See, e.g., Stine v. Weeks, No. CIV-14-847-C, 2014 WL 4627240, at *2 n.1 (W.D. Okl. Sept. 16, 2014) (discussing Plaintiff's extensive history of frivolous litigation). Accordingly, the issue before the Court is whether Plaintiff was in imminent danger of serious physical injury at the time of filing. Andrews v. Cervantes, 493 F.3d 1047, 1055 (9th Cir. 2007).

### A.  Legal Standard

28 U.S.C. § 1915 permits a federal court to authorize the commencement and prosecution of an action without prepayment of fees by an individual who submits an affidavit demonstrating that he or she is unable to pay the fees. However,

> [i]n no event shall a prisoner bring a civil action . . . under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The imminent danger exception applies if "the complaint makes a plausible allegation that the prisoner faced 'imminent danger of serious physical injury' at the time of filing." Andrews, 493 F.3d at 1055.

### B.  Plaintiff's Complaint

At all times since initiating this action, Plaintiff has been incarcerated at the federal Administrative Maximum Facility (ADX) in Florence, Colorado ("ADX – Florence"). His complaint concerns actions that occurred at United States Penitentiary – Atwater ("USP – Atwater"), although it is unclear whether Plaintiff ever was incarcerated at that facility.

Plaintiff's allegations may be summarized essentially as follows:

In 2010, Plaintiff and other inmates, including Mathew Eyre, filed suit against

3

1  BOP officials. Eyre subsequently was transferred to USP – Atwater. In late 2012,
2  Defendant Does Nos. 1 and 2 questioned Eyre about his participation in the lawsuit, told
3  Eyre to drop the case, called Plaintiff a snitch, and advised Eyre to disassociate from
4  Plaintiff.

5        Word spread to Plaintiff's institution that Plaintiff is a snitch. Plaintiff was
6  assaulted by prison gang members. These gang members are armed and have vowed
7  to kill Plaintiff at the first opportunity.

8        **C.      Parties' Arguments**

9        BOP argues that Plaintiff's allegations of imminent danger are not plausible. BOP
10  notes that Plaintiff has raised the claim that he is subjected to threats and assaults due
11  to being labeled a snitch in at least one prior case, Pinson v. Prelip, No. 13-cv-05502,
12  2014 WL 1921249 (N.D. Cal. May 13, 2014) (alleging that Plaintiff was subjected to
13  attacks by the Mexican Mafia and Aryan Brotherhood because Pelican Bay State Prison
14  employees told inmates that he was a snitch). BOP further argues that Plaintiff has a
15  demonstrated propensity to engage in abusive litigation and to present unbelievable
16  claims. Other courts have rejected Plaintiff's allegations of imminent danger of serious
17  physical injury in a variety of cases.

18        Plaintiff argues that the cases relied on by BOP are insufficient to disprove
19  imminent danger. Plaintiff claims that he has been subject to further assaults since the
20  decisions cited by BOP. He relies on his earlier allegations that he is housed in a facility
21  containing dangerous, armed inmates who intend to kill him.

22        **D.      Discussion**

23        Plaintiff alleges that armed gang members have vowed to kill him. His allegations
24  suggest that BOP thus far has been unable to protect him. These claims, on their face,
25  suggest imminent danger of serious physical injury. At the pleading stage, the Court is
26  required to accept these allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 677-78
27  (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

28        The Court has some discretion to reject allegations that are fantastic or

delusional. See Nietzke v. Williams, 490 U.S. 319, 327-28 (1989). Additionally, the Court may deny leave to proceed in forma pauperis where the claims of imminent danger are ridiculous. Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003), cited with approval in Andrews, 493 F.3d at 1057 n.11. The Court finds nothing to indicate Plaintiff's allegations are fantastic, delusional, or ridiculous. That they frequently are repeated does not make them implausible. Nonetheless, BOP refers the Court to several decisions that have reached a contrary result. The Court finds these cases unconvincing for the reasons discussed below.

First, in Prelip, Plaintiff alleged that correctional officers retaliated against him for various protected activities by telling inmates at Pelican Bay State Prison that Plaintiff is a snitch. 2014 WL 1921249, at *1. As in the instant case, word of Plaintiff's snitch status traveled to prison gang members at Plaintiff's institution, and attacks on Plaintiff followed. The District Court eventually revoked Plaintiff's in forma pauperis status on the ground he had failed to allege imminent danger. Pinson v. Frisk, No. 13-cv-05502, 2015 WL 738253 (N.D. Cal. Feb. 20, 2015).

In so doing, the District Court relied on the "nexus" test set out by the Second Circuit in Pettus v. Morgenthau, 554 F.3d 293, 299 (2nd Cir. 2009) (requiring a nexus between the imminent danger alleged in the complaint and the claims it asserts). Frisk, 2015 WL 738253, at *3. This test requires the plaintiff to show that: (1) the imminent danger of serious physical injury is fairly traceable to the unlawful conduct asserted in the complaint; and (2) a favorable judicial outcome would redress that injury. Pettus, 554 F.3d at 299.

The District Court concluded Plaintiff's allegations failed both prongs of this test. Frisk, 2015 WL 738253, at *3. First, because of the frequency with which Plaintiff has raised such allegations, it could not be said that the threats at Plaintiff's current institution were fairly traceable to any conduct by officers at Pelican Bay. Second, relief against officers at Pelican Bay would not redress any threatened injuries at Plaintiff's current institution in Colorado. The Court also concluded that Plaintiff's allegations were

fanciful and, based on the factual findings of other courts, that Plaintiff's current institution is too secure to allow for the types of attacks Plaintiff alleged. Frisk, 2015 WL 738253, at *3.

As an initial matter, the Court notes that the Ninth Circuit has not adopted the nexus test developed by the Second Circuit. Indeed, the Ninth Circuit has cautioned against creating "any extension of § 1915(g)'s provisions." Williams v. Paramo, 775 F.3d 1182, 1189 (9th Cir. 2015). Perhaps for this reason, few decisions in this district have applied the nexus test. Plaintiff has appealed the order applying the nexus test to his own action and, at the time of issuing these findings and recommendations, his appeal remains pending. Thus, it remains an open question whether the nexus test is the appropriate calculus for evaluating whether Plaintiff faced imminent danger.

The Court further notes that the nexus test is not derived from the statutory text of the Prison Litigation Reform Act, but from the law of standing and policy considerations underlying the PLRA. See Pettus, 554 F.3d at 297-99. In contrast, the Ninth Circuit has stressed that interpretation of § 1915(g) should be controlled by the plain language of the statute. Williams, 775 F.3d at 1188. The Ninth Circuit also has stressed that "§ 1915(g) concerns only a threshold procedural question," and cautions that District Courts should not "make an overly detailed inquiry into whether the allegations qualify for the exception." Andrews, 493 F.3d at 1055. The Court must determine whether the Plaintiff has plausibly alleged an ongoing danger of serious physical injury, not whether such a claim has merit. Id. This determination does not require the Court to conduct "mini-trials over whether a prisoner has shown an imminent danger." Williams, 775 F.3d at 1190.

Here, the Court cannot say that Plaintiff's allegations are implausible and, when taken as true, they certainly allege an imminent danger of serious physical injury. Accordingly, the Court respectfully declines to follow the reasoning in Frisk.

BOP next refers the Court to Stine v. Federal Bureau of Prisons Designation and Sentence Computation Unit, 571 Fed. Appx. 352, 353 (5th Cir. 2014) (unpublished).

There, Plaintiff was denied leave to proceed in forma pauperis on appeal. Plaintiff alleged he faced attacks and a threat of serious injury from prison gangs at unspecified times in the past. The Fifth Circuit rejected the contention that these alleged threats and attacks constituted an imminent danger. The Fifth Circuit noted that other courts had rejected similar claims of imminent danger by Plaintiff on the ground that Plaintiff is incarcerated in a highly secure facility, where such assaults are unlikely to occur. Id. at 353-54. Additionally, although not applying the nexus test directly, the Fifth Circuit noted that redress for the threats in Colorado was not possible in a suit against correctional officers in Texas. Id. at 354.

Federal Bureau of Prisons Designation and Sentence Computation Unit bears strong similarities to the case presented here, although the Court is not privy to the specifics of the allegations the Fifth Circuit found insufficient. Nevertheless, the Fifth Circuit apparently applied a version of the nexus test, which the Court herein declines to apply for the reasons stated above. Additionally, in light of the Ninth Circuit's admonishment not to engage in "mini-trials over whether a prisoner has shown an imminent danger," Williams, 775 F.3d at 1190, the Court also declines to engage in the type of fact finding suggested by the Fifth Circuit. That is, the Court declines to weigh the findings of other Courts regarding the security of Plaintiff's current institution against Plaintiff's own allegations that he has been attacked, and is at risk of further attacks. For these same reasons, BOP's citations to Pinson v. Pacheco, 397 Fed. Appx. 488, 492 (10th Cir. 2010); Hobbs v. Doe, No. 5:13-CT-3279-D, 2014 WL 229343, at *3 (E.D.N.C. Jan. 21, 2014); and Stine v. Federal Bureau of Prisons, No. 10-cv-01652-BNB, 2010 WL 3276196 (D. Colo. Aug. 7, 2010), are similarly unavailing.

The remaining case cited by BOP, Stine v. U.S. Federal Bureau of Prisons, No. 11-cv-2665-LTB, 2011 WL 6119124, at *2 (D. Colo. Dec. 8, 2011), concluded that Plaintiff was not in imminent danger in relation to his medical issues. The case bears no relation to the allegations at issue here and is therefore inapposite.

### E. Conclusion

BOP has presented evidence indicating that Plaintiff has a long history of abusive and sometimes fraudulent litigation. However, Plaintiff nonetheless has alleged a threat of imminent danger sufficient to proceed in forma pauperis in this action. Accordingly, BOP's motion to revoke Plaintiff's in forma pauperis status should be denied.

## IV. MOTION TO DECLARE 28 U.S.C. § 1915 UNCONSTITUTIONAL

Plaintiff filed a motion to declare 28 U.S.C. §§ 1915(b)(2) and (g) unconstitutional.

### A. 28 U.S.C. § 1915(g)

28 U.S.C. § 1915(g) is the "three strikes" provision discussed above. The United States Court of Appeals for the Ninth Circuit has concluded that 28 U.S.C. § 1915(g) is not unconstitutional. Rodriguez v. Cook, 169 F.3d 1176, 1181 (9th Cir. 1999). Further, based on the recommendation herein to deny BOP's motion to revoke Plaintiff's in forma pauperis status, 28 U.S.C. § 1915(g) has not inhibited Plaintiff's ability to bring this action. His challenge to the constitutionality of 28 U.S.C. § 1915(g) therefore is moot, and his motion should be denied.

### B. 28 U.S.C. § 1915(b)(2)

Plaintiff argues that, for prisoners like himself who have filed multiple civil actions in forma pauperis, 28 U.S.C. § 1915(b)(2) imposes an unconstitutional requirement that he pay all of his monthly income toward filing fees. Plaintiff apparently seeks to have his multiple filing fees collected sequentially, rather than simultaneously.

#### 1. Legal Standard

Prisoners granted pauper status must make an initial partial payment at the time of filing, followed by monthly installments until the filing fees are paid in full. 28 U.S.C. § 1915(b). The initial filing fee is charged as follows:

> Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial

8

> filing fee of 20 percent of the greater of --
> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

28 U.S.C. § 1915(b)(1).

After the initial partial payment, the prisoner is required to make monthly payments as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C § 1915(b)(2).

There is a split of authority as to the manner in which prisoners are required to pay filing fees under § 1915(b)(2).[1] The Second and Fourth Circuits have held that § 1915(b)(2) requires that filing fees be collected sequentially, meaning that an indigent prisoner may be assessed no more than 20 percent of his monthly income, regardless of the number of suits filed. Whitfield v. Scully, 241 F.3d 264, 278 (2d. Cir. 2001); Torres v. O'Quinn, 612 F.3d 237, 240 (4th Cir. 2010). In these Circuits, each filing fee is satisfied in the order incurred.

The Fifth, Seventh, Eighth, Tenth, and District of Columbia Circuits have held that § 1915(b)(2) requires an indigent prisoner to simultaneously pay 20 percent of his monthly income toward each outstanding filing fee, even if this results in 100 percent of a prisoner's monthly income being collected. Atchison v. Collins, 288 F.3d 177, 180-81 (5th Cir. 2002); Newlin v. Helman, 123 F.3d 429, 436 (7th Cir. 1997), overruled in part on other grounds by Lee v. Clinton, 209 F.3d 1025 (7th Cir. 2000); Lefkowitz v. Citi-Equity Grp., Inc., 146 F.3d 609, 612 (8th Cir. 1998); Christensen v. Big Horn Cnty. Bd.

---

[1] Additionally, this issue is presently pending before the United States Supreme Court. Pinson v. Samuels, 761 F.3d 1 (D.C. Cir. 2014), cert. granted, Bruce v. Samuels, 83 U.S.L.W. 3640 (U.S. June 15, 2015) (No. 14-844).

9

of Cnty. Comm'rs, 374 Fed. App'x 821, 833 (10th Cir. 2010) (unpublished); Pinson v. Samuels, 761 F.3d 1, 8 (D.C. Cir. 2014). Although the Ninth Circuit has not addressed this issue, District Courts within this Circuit also have required indigent prisoners to simultaneously pay toward multiple filing fees. Hendon v. Ramsey, 478 F. Supp. 2d 1214, 1219 (S.D. Cal. 2007); Samonte v. Frank, 517 F. Supp. 2d 1238, 1243 (D. Haw. 2007).

### a.   Sequential Approach

The Second Circuit has found that the "text and structure of § 1915 fail to provide a definitive answer" as to whether PLRA filing fees should be collected sequentially or simultaneously. Whitfield, 241 F.3d at 276. Indeed, the Second Circuit concluded that § 1915(b)(2) plausibly could be read to require either simultaneous or sequential collection of filing fees. Id. at 277. Nevertheless, the Second Circuit held that the statute requires sequential collection of filing fees because "simultaneous collection of multiple encumbrances could potentially expose 100 percent of a prisoner's income to recoupment," which "arguably could pose a serious constitutional quandary as to whether an unreasonable burden has been placed on the prisoner's right of meaningful access to the courts." Id.

The Fourth Circuit concluded that the PLRA is silent as to the manner in which filing fees should be collected. Torres, 612 F.3d at 244. However, the Fourth Circuit interpreted the plain language of § 1915(b)(2) as imposing a 20 percent monthly ceiling on the amount that may be deducted from a prisoner's account to pay for any and all court fees. Id. at 245-46. The Court found that this interpretation comported with Congressional intent and staved off grave "access to courts issue[s] of constitutional dimensions." Id. at 246-48.

### b.   Simultaneous Approach

The Seventh Circuit noted that § 1915 "does not tell us whether the 20 percent-of-income payment is per case or per prisoner." Newlin, 123 F.3d at 436. However, the court concluded that multiple filing fees must be collected from an inmate's trust account

simultaneously because sequential collection would allow a prisoner to "file multiple suits for the price of one, postponing payment of fees for later-filed suits." Id. The court further noted that the PLRA was "designed to require the prisoner to bear some marginal cost for each legal activity," a goal which would not be achieved "[u]nless payment begins soon after the event that creates liability." Id. The Eighth Circuit also adopted this approach, echoing the Seventh Circuit's statements regarding the policies underlying the PLRA. Lefkowitz, 146 F.3d at 612.

The Fifth Circuit reached the same result, although based on a more detailed review of the statutory language. Atchison, 288 F.3d at 180-81. The Fifth Circuit concluded that § 1915(b)(1) and § 1915(b)(2) were meant to be read together, and together unambiguously required the simultaneous collection of multiple filing fees. Id. at 181. The court rejected the notion that the simultaneous approach presented constitutional concerns because prisoners are not forced to choose between the necessities of life and filing a lawsuit. Id.

The Tenth Circuit likewise has concluded that, when read as a whole, the plain language of § 1915 requires the simultaneous collection of multiple filing fees. Christensen, 374 Fed. App'x at 830-31. The Tenth Circuit noted that this interpretation "furthers the overarching purpose of imposing the installment-payment obligations uniquely on prisoners, which . . . is to reduce frivolous prisoner litigation by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees." Id. at 831 (internal quotation marks and citation omitted). The court acknowledged, but rejected, the constitutional concerns raised by the Second Circuit. Id. at 832.

The D.C. Circuit also has concluded that, "[t]aken as a whole, the language and operation of § 1915 indicate that its provisions apply to each action or appeal filed by a prisoner; and subsection (b)(2), governing the payment of fees in installments, is no exception. Pinson, 761 F.3d at 8. The D.C. Circuit also concluded that § 1915(b)(4), providing that a prisoner may not be prohibited from bringing suit based on a lack of

assets, along with the requirement that prison officials afford inmates adequate food, clothing, shelter, and medical care, allay any constitutional concerns. Id. at 9-10. Finally, the court concluded that the simultaneous approach comports with the purposes of the PLRA, particularly that of deterring prisoners from filing frivolous lawsuits. Id. at 10.

### 2. Discussion

It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 809 (1989). Here, the language and structure of § 1915(b) indicate that the installment payment requirement applies to each action or appeal filed by a prisoner, and therefore that filing fees should be withdrawn from prisoner-plaintiffs' trust accounts simultaneously.

First, the plain language of 28 U.S.C. § 1915(b)(1) is read by this Court as calling for assessment of the initial partial filing fee <u>each time</u> a prisoner "brings a civil action or files an appeal": "[I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall . . . collect, as a partial payment of any court fees required by law, an initial partial filing fee . . . ." 28 U.S.C. § 1915(b)(1).

Subsection (b)(2) immediately follows this provision and states: "[a]fter payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income." 28 U.S.C. § 1915(b)(2) (emphasis added). Because the initial filing fee required by subsection (b)(1) is here interpreted to apply on a per-case basis, it follows that subsection (b)(2)'s installment provision likewise applies on a per-case basis.

Other provisions of § 1915 can be read to support this interpretation. For example § 1915(a)(2) requires a prisoner to submit a certified copy of his or her trust fund account statement for the 6-month period immediate preceding the filing of the complaint or notice of appeal. Because the statement must reflect the 6-month period preceding filing, the requirement necessarily applies each time the prisoner files a

complaint or notice of appeal. Additionally, Subsection (e)(2) permits the court to dismiss a case at any time if it is frivolous, malicious, or fails to state a claim. And, subsection (f)(1) allows the court to render judgment for costs "at the conclusion of the suit or action." Given that these provisions impose requirements or obligations for each civil action or appeal a prisoner files, it would be incongruous to conclude that subsection (b)(2) – and only subsection (b)(2) – imposes a global cap on monthly installment payments for <u>all</u> of the cases filed by a prisoner.

Additionally, the simultaneous approach comports with the PLRA's primary purpose. The PLRA was enacted to "curtail the extraordinary costs of frivolous prisoner suits and minimize such costs to taxpayers." <u>Rodriguez</u>, 169 F.3d at 1181. "Requiring prisoners to pay filing fees for suits will force them to go through the same thought process non-inmates go through before filing a suit, i.e., is filing this suit worth the costs?" <u>Id.</u>

Finally, simultaneous collection of multiple filing fees does not raise constitutional concerns. "Because prisoners are in the custody of the state and accordingly have the 'essentials of life' provided by the government," the simultaneous collection of filing fees does not require an indigent prisoner to "make the choice between his lawsuit and the necessities of life," even if 100% of the prisoner's monthly income is collected in filing fees. See <u>Taylor v. Delatoore</u>, 281 F.3d 844, 849 (9th Cir. 2002). Nor does the sequential collection of filing fees interfere with a prisoner's access to the courts. "In no event shall a prisoner be prohibited from brining a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." 28 U.S.C. § 1915(b)(4). Moreover, inmates must be provided, at government expense, with "paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." <u>Bounds v. Smith</u>, 430 U.S. 817, 824-25 (1977). Thus, even if 100% of Plaintiff's monthly income is taken for the simultaneous collection of multiple filing fees, neither the necessities of life nor access to the courts will be denied him.

### 3. Conclusion

Based on the foregoing, the Court concludes that 28 U.S.C. § 1915(b)(2) requires that multiple filing fees be collected simultaneously, and that Plaintiff's constitutional concerns are overstated. Accordingly, Plaintiff's motion to declare 28 U.S.C. § 1915(b)(2) unconstitutional should be denied.

## V. CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the PACER records submitted by BOP are the proper subject of judicial notice. Accordingly, it is HEREBY RECOMMENDED that BOP's request for judicial notice (ECF No. 15-2) be GRANTED.

The Court further finds that Plaintiff's complaint plausibly alleged that Plaintiff was in imminent danger of serious physical injury at the time of filing. Accordingly, it is HEREBY RECOMMEDED that BOP's motion to revoke Plaintiff's in forma pauperis status (ECF No. 15) be DENIED.

Because the Court recommends that BOP's motion to revoke Plaintiff's in forma pauperis status be denied, it is FURTHER RECOMMENDED that Plaintiff's motion to declare 28 U.S.C. § 1915(g) unconstitutional (ECF No. 16) be DENIED as moot. Lastly, the Court concludes that the simultaneous collection of filing fees under 28 U.S.C. § 1915(b)(2) does not raise constitutional concerns. Accordingly, it is FURTHER RECOMMENDED that Plaintiff's motion to declare 28 U.S.C. § 1915(b)(2) unconstitutional (ECF No. 16) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on

appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   July 13, 2015          /s/ *Michael J. Seng*
                                                   UNITED STATES MAGISTRATE JUDGE