UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKEAL STINE,<br><br>　　　　　Plaintiff<br><br>　　　v.<br><br>FEDERAL BUREAU OF PRISONS, JOHN DOE 1, JOHN DOE 2, and "UNKNOWN DEFENDANTS"<br><br>　　　　　Defendant | CASE NO. 1:13-CV-1883 AWI MJS<br><br>ORDER ON FINDINGS AND RECOMMENDATIONS, ORDER REVOKING IFP STATUS, AND ORDER DENYING ALL OTHER PENDING MOTIONS<br><br>(Doc. Nos. 15, 16, 19) |

Plaintiff Mikeal Stine ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis in this *Bivens* civil rights action.[1] Plaintiff filed this action on November 12, 2013, and the Court granted his application to proceed in forma pauperis ("IFP") on February 3, 2014. See Doc. No. 8. Defendants filed a motion to revoke Plaintiff's in forma pauperis status on January 23, 2015. See Doc. No. 15. On February 9, 2015, Plaintiff filed a motion to find portions of 28 U.S.C. § 1915 unconstitutional. See Doc. No. 16. These motions were referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On July 13, 2015, the Magistrate Judge issued a Findings and Recommendation ("F&R") that both motions be denied. See Doc. No. 19. The F&R was served on the parties and contained notice that any objections must be filed within fourteen days. No party filed objections.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this Court has conducted a

---

[1] This case was originally filed by Plaintiff, Jeremy Pinson, and Jeremy Brown. See Doc. No. 1. The Magistrate Judge severed the case into three separate cases. See Doc. No. 2. Plaintiff filed the First Amended Complaint in accordance with the severance order.

review of this case.  Having carefully reviewed the entire file, the Court respectfully disagrees with the F&R as to Defendant's motion to revoke Plaintiff's IFP status and will grant Defendant's motion.  With respect to Plaintiff's motion to find portions of 28 U.S.C. § 1915 unconstitutional, the agrees that this motion should be denied, and therefore will adopt this aspect of the F&R.[2]

*Defendant's Argument & F&R's Conclusion*

Defendant's motion to revoke argued that Plaintiff is subject to the three strikes provision of 28 U.S.C. § 1915(g), and that Plaintiff's allegations of imminent danger have been rejected by other courts.  The F&R found Plaintiff is subject to the three strikes provision, but found that Plaintiff had sufficiently alleged imminent danger.  The F&R rejected the analysis of *Pinson v. Frisk*, 2015 U.S. Dist. LEXIS , 2015 U.S. Dist. LEXIS 21396 (N.D. Cal. Feb. 20, 2015), which had found similar allegations of imminent danger to be insufficient.  The F&R disagreed with *Frisk*'s adoption of *Pettus v. Morgenthau*, 554 F.3d 293 (2d Cir. 2009), which requires a "nexus" between a prisoner's cause of action and the imminent danger alleged.  Instead, the F&R concluded that Plaintiff's allegation of imminent danger need only be "plausible," and that Plaintiff's allegations met that standard.

*Allegations In The First Amended Complaint*

In the First Amended Complaint, Plaintiff alleged that he and two other inmates (Pinson and Eyre) initiated a lawsuit in 2010 in the D.C. Circuit ("D.C. Case").  Eyre was transferred to the United States Penitentiary in Atwater, California.  At Atwater, two Federal Bureau of Prison ("BOP") employees (who are Defendants John Doe 1 and John Doe 2)[3] questioned Eyre about the facts of the D.C. Case and urged him to drop it because Plaintiff and Pinson were "notorious

---

[2] The F&R recommended denying Plaintiff's constitutional challenges on the merits and, with respect to § 1915(g), also on the basis that the challenge was moot in light of the recommendation to deny Defendant's motion to revoke. Because the Court is granting Defendant's motion, the Court will decline to adopt the F&R's analysis relating to mootness.  Otherwise, the Court will adopt the F&R and deny Plaintiff's motion.

[3] The Court notes that Plaintiff named the BOP as a defendant in this 42 U.S.C. § 1983 action.  However, federal agencies enjoy sovereign immunity and are not "persons" for purposes of § 1983.  Jachetta v. United States, 653 F.3d 898, 908 (9th Cir. 2011).  Also, the Supreme Court has explained, that if a prisoner "in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity.  The prisoner may not bring a *Bivens* claim against the officer's employer, the United States or the BOP.  With respect to the alleged constitutional deprivation, his only remedy lies against the individual . . . ." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 71-72 (2001).  Thus, the BOP is not a proper defendant.

snitches." As a result of the two John Doe Defendants' statements to Eyre, word has been sent that Plaintiff is a snitch. Plaintiff has been assaulted by members of the Mexican Mafia and Aryan Brotherhood prison gangs. Members of these gangs have vowed to kill Plaintiff at the first opportunity at any facility that the BOP places them. Plaintiff alleges that inmates are armed and attempting to murder him. Plaintiff alleges that he has been told by several inmates from Atwater that personnel at Atwater commonly tell inmates not to talk to Plaintiff or else those inmates will also be considered snitches. Plaintiff alleges that John Doe 1 and John Doe 2 have intentionally placed Plaintiff's life in jeopardy and that he is under imminent danger of assault.

When Plaintiff filed his complaint, he was confined at the BOP penitentiary in Florence, Colorado. Plaintiff remains confined in Florence.

*28 U.S.C. § 1915(g)*

28 U.S.C. § 1915(g) is part of the Prison Litigation Reform Act ("PLRA"). The PLRA was intended to eliminate frivolous lawsuits, and its main purpose was to address the overwhelming number of prisoner lawsuits. Cano v. Taylor, 739 F.3d 1214, 1219 (9th Cir. 2014). 28 U.S.C. § 1915(g) reads:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). As the Supreme Court has stated, this "three strikes rule" was part of "a variety of reforms designed to filter out the bad claims filed by prisoners and facilitate consideration of the good." Coleman v. Tollefson, 135 S.Ct. 1759, 1762 (2015) (quoting Jones v. Block, 549 U.S. 199, 204 (2007)). If a prisoner has "three strikes" under § 1915(g), the prisoner will be barred from proceeding IFP unless he meets the exception for imminent danger of serious physical injury. See Andrews v. Cervantes, 493 F.3d 1047, 1052 (9th Cir. 2007). The Ninth Circuit has held that the complaint of a "three-strikes" prisoner must plausibly allege that the prisoner was faced with imminent danger of serious physical injury at the time his complaint was filed. See Williams v. Paramo, 775 F.3d 1182, 1189 (9th Cir. 2014); Andrews, 493 F.3d at 1055.

*Discussion*

There is no question that Plaintiff has accumulated more than "three strikes" for purposes of § 1915(g). Plaintiff's numerous "strikes" are well known and documented. E.g. Stine v. Federal Bureau of Prisons, 571 Fed. Appx. 352 (5th Cir. 2014); Stine v. Federal Bureau of Prisons, 2013 U.S. Dist. LEXIS 176875, *3 (N.D. Tex. Dec. 17, 2013). Accordingly, the relevant question in this case is whether Plaintiff has adequately alleged that he is in "imminent danger."

In *Pettus v. Morgenthau*, 554 F.3d 293 (2d Cir. 2009), the Second Circuit rejected the argument that, as long as a prisoner claims to be under imminent danger of serious physical injury, the prisoner can proceed IFP on any claim. See id. at 296-97. The Second Circuit declined to interpret the imminent danger exception *verbatim ac literatim*, but instead construed the exception by considering its text and context. See id. The Second Circuit explained:

> As we have previously noted, "Congress adopted the [PLRA] with the principal purpose of deterring frivolous prisoner lawsuits and appeals." Once three of an indigent prisoner's lawsuits have been dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, the prisoner must pay the standard filing fee if he wishes to file additional lawsuits. In the context of this statutory scheme, the imminent danger exception is designed to provide "a safety valve for the 'three strikes' rule." Its unmistakable purpose is to permit an indigent three-strikes prisoner to proceed IFP in order to obtain a judicial remedy for an imminent danger. Under the amicus's proposed reading of the statute, however, an indigent prisoner with a history of filing frivolous complaints could, by merely alleging an imminent danger, file an unlimited number of lawsuits, paying no filing fee, for anything from breach of a consumer warranty to antitrust conspiracy. No reasonable reader would understand the self-evidently narrow "imminent danger" exception to sweep so broadly. Congress, after all, does not "hide elephants in mouseholes."

Id. at 297 (internal citations omitted). The Second Circuit later analogized the imminent danger exception to standing jurisprudence, which in part attempts to ensure that a plaintiff's claim is "within the zone of interests that Congress intended to protect by means of a particular statute." Id. at 298. Ultimately, the Second Circuit concluded:

> [W]e hold that the complaint of a three-strikes litigant must reveal a nexus between the imminent danger it alleges and the claims it asserts, in order for the litigant to qualify for the "imminent danger" exception of § 1915(g). In deciding whether such a nexus exists, we will consider (1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would redress that injury. The three-strikes litigant must meet both requirements in order to proceed IFP. This inquiry is not identical to our ordinary standing inquiry, but we believe it is sufficiently similar to afford guidance to courts considering the

nexus question. Id. at 298-99.

The F&R was concerned that *Pettus*'s nexus requirement would represent an extension of § 1915(g), and that the nexus requirement was based on the law of standing, as opposed to the text of the act. The F&R relied on Ninth Circuit authority that looked to the plain language of § 1915(g) to interpret its provisions, and that warned courts to be cautious about extending § 1915(g). See Williams, 775 F.3d at 1188-89. The Court understands the F&R's concern, but it respectfully disagrees that *Williams* should prevent adoption and application of *Pettus*.

First, as quoted above, *Pettus*'s nexus requirement is based primarily on the text and context of § 1915(g). See Pettus, 554 F.3d at 297. The Court agrees with *Pettus* that a natural reading of § 1915, § 1915(g), and the imminent danger requirement shows that at least one claim pursued must be connected to, and meant to redress, the imminent danger faced by the prisoner. See id. The Court also agrees with *Pettus* that without a nexus between the imminent danger and at least one claim,[4] a three-strikes prisoner could pursue myriad lawsuits by simply including a single and wholly unrelated allegation of imminent danger in his complaints. See id. at 297. Such a result would be contrary to the purpose of the PLRA. It is true that *Pettus* discussed the law of standing. See id. at 297-98. However, *Pettus* did so by way of analogy and as a means of further supporting its conclusion that the text and context of the imminent danger exception included a nexus requirement. See id. Thus, although the law of standing supported the nexus requirement, the primary basis for the requirement was the text and context of § 1915(g). See id. That is consistent with Ninth Circuit precedent. While statutory interpretation begins with the text of the statute, the Ninth Circuit has admonished that courts "do not look at statutory language in isolation, but consider 'the specific context in which that language is used, and the broader context of the statute as a whole.'" Yokeno v. Sekiguchi, 754 F.3d 649, 653 (9th Cir. 2014) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)); see also Pettus, 554 F.3d at 297. *Williams* relied on the plain text of § 1915(g) to answer the question before, but it did not prohibit

---

[4] As long as one cause of action has a sufficient nexus to the imminent danger alleged, other causes of action that do not have a nexus to the danger can be pursued. See Chavis v. Chappius, 618 F.3d 162, 171-72 (2d Cir. 2010); Andrews, 493 F.3d at 1054.

5

consideration of the context of § 1915(g) or its specific provisions.  The Court does not find *Pettus*'s approach to be a departure from either *Williams* or *Yokeno*.

      Second, because the nexus requirement is derived from the text and context of § 1915(g), it is not an extension of § 1915(g) beyond its terms.  Rather, the nexus requirement is an application of § 1915(g)'s plain terms.  With respect to *Williams*'s caution about extending § 1915(g), the issue in that case was whether a "three strikes" prisoner must demonstrate imminent danger at the time of appeal, or whether the prisoner could continue to rely on the imminent danger that had been established at the time the lawsuit was filed.  See id. at 1185.  The Ninth Circuit held that a "three strikes" prisoner seeking IFP status on appeal must show imminent danger at the time of appeal, and that prisoner Williams had done so.  See id. at 1190.  Of note, the Ninth Circuit found that Williams's allegations of constantly receiving death threats "are clearly related to her initial complaint regarding the rumors started by defendants and their erroneous assignment of an 'R' suffix to her prison file."  Id.  In other words, the Ninth Circuit was describing a nexus.  Further, although no Ninth Circuit case has cited to *Pettus* or addressed *Pettus*'s "nexus requirement," *Pettus* has been applied by numerous federal courts, including district courts within the Ninth Circuit.  Ball v. Hummel, 577 Fed. Appx. 96, 96 n.1 (3d Cir. 2014); May v. Andrews, 2015 U.S. Dist. LEXIS 71442, *11-*12 (S.D. Ala. May 8, 2015); Johnson v. Sonoma Cnty. Main Adult Det. Facility, 2015 U.S. Dist. LEXIS 49780, *6 (N.D. Cal. Apr. 15, 2015); Grandinetti v. Judiciary of Haw., 2015 U.S. Dist. LEXIS 52996, *8 n.3 (D. Haw. Apr. 6, 2015); Pinson v. Frisk, 2015 U.S. Dist. LEXIS 21396, *6 (N.D. Cal. Feb. 20, 2015); Credico v. Belfonti, 2014 U.S. Dist. LEXIS 99227, *3 (E.D. Pa. July 22, 2014); Lewis v. Stephens, 2014 U.S. Dist. LEXIS 2611, *6 (S.D. Tex. Jan. 9, 2014); Perry v. Boston Sic. Family, 2013 U.S. Dist. LEXIS 171545, *5-*7 (D. Minn. Dec. 5, 2013); Dickerson v. Vienna Corr. Ctr., 2013 U.S. Dist. LEXIS 94362, *7 (S.D. Ill. July 8, 2013); Chappel v. Fleming, 2013 U.S. Dist. LEXIS 70558, *13 (E.D. Cal. May 17, 2013); Williams v. Boner, 2012 U.S. Dist. LEXIS 5555, *3 (M.D. N.C. Jan. 18, 2012); Corrion v. Heyns, 2012 U.S. Dist. LEXIS 59102, *4 (E.D. Mich. Apr. 27, 2012); Davis v. United States Dist. Ct., 2012 U.S. Dist. LEXIS 30243, *2 (D. Kan. Mar. 7, 2012); see also Stine v. Fed. Bureau of Prisons Designation and Sentence Computation Unit, 571 Fed. Appx. 352, 354 (5th Cir. 2014) ("Stine has

also failed to plausibly plead any connection between the alleged imminent danger in Colorado and his claims against the BOP defendants in Texas . . . ."); Alston v. FBI, 747 F.Supp.2d 28, 31 (D. D.C. 2010). Considering the text and context of § 1915(g), the Ninth Circuit's analysis in *Williams*, and the numerous cases that follow *Pettus* both inside and outside the Ninth Circuit, the Court does not find that the *Pettus*'s nexus requirement is an improper extension of § 1915(g).

In sum, the Court agrees with *Pettus* and the cases that have adopted and applied the nexus requirement for § 1915(g)'s imminent danger exception. A "three strikes" prisoner seeking to litigate IFP must allege facts that plausibly show he is imminent danger. See Andrews, 493 F.3d at 1055; Johnson, 2015 U.S. Dist. LEXIS 49780 at *6. However, the allegations must also reveal a nexus between at least one cause of action and the imminent danger that is plausibly alleged. See Chavis v. Chappius, 618 F.3d 162, 171-72 (2d Cir. 2010); see also Andrews, 493 F.3d at 1054. In deciding whether such a nexus exists, the Court will consider: "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint; and (2) whether a favorable judicial outcome would redress that injury." Pettus, 554 F.3d at 298-99; Johnson, 2015 U.S. Dist. LEXIS 49780 at *6.

The Northern District recently applied the nexus requirement to Plaintiff. In *Stine v. Frisk*, Plaintiff alleged that "Frisk told several Pelican Bay SHU inmates in 2012 that all the plaintiffs were snitches – this info was communicated to members of the Aryan Brotherhood and Mexican Mafia that resulted in attacks on Pinson and Stine by armed inmates at ADX Florence who continue to threaten to kill them both, are housed near them, and are still armed." Frisk, 2015 U.S. Dist. LEXIS 21396 at *7. The Northern District found that the allegations were insufficient to allege imminent danger. The Northern District explained:

> The Court finds that this allegation is insufficient to show the imminent danger is fairly traceable to the alleged unlawful conduct or that a favorable outcome will redress the threat of danger. Although the plaintiffs assert that, in late 2013 or early 2014, they were in imminent danger from inmates at ADX Florence because Frisk told inmates at Pelican Bay that they were snitches, this is not the first time the plaintiffs have claimed imminent danger based on a "snitches" allegation. . . . In 2011, when Stine was incarcerated at ADX Florence, he invoked the imminent danger exclusion by alleging that he was an ex-member of the Aryan Brotherhood and, because he had cooperated with law enforcement against its members, he feared he would be attacked or killed if he was moved to the general population. See Stine v. Federal Bureau of Prisons, 2010 U.S. Dist. LEXIS 93573, 2010 WL

3276196, *2 (D. Col. Aug. 17, 2010). The court held that Stine's allegation did not show that he was in imminent danger of serious physical injury, relying, in part, on findings that: (1) ADX Florence is the most secure facility in the Bureau of Prisons; (2) inmates in the General Population or Special Housing Units are separated by a barred grille and if interaction occurs outside of a cell, the inmate is restrained; (3) at no time are inmates allowed to move within the institution without some form of supervision and they generally remain in their cells twenty-one to twenty-three hour per day; (4) recreation is conducted in separate areas that are separated from another inmate's recreation area by heavy-duty fencing; and (5) meals, programming and showering take place in an inmate's cell. Id. In 2014, Pinson and Stine and other inmates invoked the imminent danger exclusion from § 1915(g) by alleging they were in danger from assault by other inmates. See Hobbs v. Doe, 2014 U.S. Dist. LEXIS 7180, 2014 WL 229343, *3 (E.D.N.C. Jan. 21, 2014). Citing other cases in which Pinson and Stine had alleged they were at risk of harm from other inmates at ADX Florence, the court held that the allegations failed to show they were in imminent danger. Id. In *Pinson v. Armijo*, 2014 U.S. Dist. LEXIS 35289, 2014 WL 1034992, *2 (D. Col. Mar. 18, 2014), the court listed other cases in which the plaintiffs alleged they were in danger from other inmates because they had been labelled snitches: (1) *Pinson v. Unknown Party*, No. 13-cv-02059-DCB-PSOT (D. Ariz. Filed Dec. 6, 2013) (alleged inmates at federal prison in Tucson, Arizona, were told Pinson is a snitch; court found no imminent danger under § 1915(g)); (2) *Pinson, et al., v. John Does*, No. 13-cv-013077-NMG (D. Ma. Filed Nov. 25, 2013) (Pinson and Stine alleged an investigative agent in Maryland labeled them snitches); (3) *Pinson, et al., v. John Doe*, et al., No. 13-cv-00134-ART (E.D. Ky. Filed Nov. 20, 2013) (alleged special investigative agent at USP Inez told inmate that Pinson and Stine are snitches; as a result they have been assaulted and threatened) . . . . Id.

This list of cases with the same allegations made in this case, that the plaintiffs are in danger from inmates because those inmates were told by prison staff that the plaintiffs are snitches, warrants a conclusion that the allegations in this complaint are fanciful.

And even if the allegation about Frisk were true, it does not follow that the plaintiffs face imminent danger. Because the plaintiffs allege that the "snitch" rumors come from so many different sources, it is not possible to trace the imminent danger in late 2013 or early 2014, when the plaintiffs filed their complaint and CAC, to the "snitch" remark allegedly made by Frisk in 2012, at least one year before the complaint was filed. Furthermore, even if the plaintiffs obtained a favorable outcome in this case, it would not prevent the alleged imminent danger in light of the fact that the Court does not have jurisdiction over the Bureau of Prisons or officials at ADX Florence because they are not parties to this action and, therefore, the Court cannot direct them to take action to protect the plaintiffs. See Dkt. No. 45 at 2-3, Order Denying Plaintiff's Motion for TRO and Preliminary Injunction (explaining Court lacks jurisdiction to order Bureau of Prisons and officials at ADX Florence to protect the plaintiffs from inmates' attacks by housing the plaintiffs in a unit with other protective custody inmates).

Furthermore, this Court relies on the findings of the many courts listed above, that the allegations that the plaintiffs are in danger of being attacked by inmates at ADX Florence does not show imminent danger because ADX Florence is one of the most secure institutions in the federal penal system.

For all of these reasons, the Court finds that the allegations in the complaint are insufficient to show that the plaintiffs were in imminent danger at the time the complaint was filed. The complaint is dismissed without prejudice to the plaintiffs

paying the full filing fee.

Frisk, 2015 U.S. Dist. LEXIS 21396 at *7-*12 (some citations omitted).

Here, the allegations made by Plaintiff are materially the same as those he made in *Frisk*,[5] and the Court largely agrees with the analysis of *Frisk*. The number of times Plaintiff has alleged being in imminent danger due to various BOP guards labeling him a snitch, combined with Plaintiff being housed in one of the most secure federal prisons in the United States, tends to make Plaintiff's allegation overly speculative and fanciful.[6] See id. at *8-*10. Overly speculative and fanciful allegations do not plausibly show imminent danger. See Andrews, 493 F.3d at 1057 n.11.

In terms of establishing a nexus, Plaintiff's allegations do not meet the *Pettus* standard. First, as *Frisk* demonstrates, Plaintiff has alleged that other BOP personnel at other prisons have labeled him a snitch. Frisk, 2015 U.S. Dist. LEXIS 21396 at *7-*8. Any imminent danger that may exist from being labeled a snitch does not seem traceable to the unknown personnel in Atwater. See id. Second, Plaintiff was (and still is) being held at the federal prison in Florence, Colorado, which means that the imminent danger would have to be present in Florence. The Court has no jurisdiction over BOP personnel in Florence, and the two John Doe Atwater defendants have no control over the conditions at Florence. This means that the Court could not issue an order that redresses Plaintiff's injury.[7]

In sum, Plaintiff's allegations are overly speculative and fanciful, and he fails to establish a nexus between the imminent danger alleged and any claim made in this case. Plaintiff's allegations do not show eligibility for IFP status under the § 1915(g) imminent danger exception.

---

[5] They are also extremely similar to the allegations he made in *Hobbs v. Doe*, 2014 U.S. Dist. LEXIS 7180, *4-*5 (E.D. N.C. Jan. 21, 2014), in which Stine alleged that he and Pinson were attacked by other inmates after North Carolina based BOP guards took aside inmate and then co-plaintiff Hobbs to talk about the D.C. Case and told Hobbs that Pinson and Stine were notorious snitches.

[6] The Court clarifies that simply because an inmate is held in a highly secure penitentiary does not mean that the inmate cannot be in imminent danger. However, in this instance, given the number of cases in which Plaintiff alleges that he has been labeled a snitch by BOP personnel and is in imminent danger, the nature of prison life and security at Florence is a highly relevant consideration. See Frisk, 2015 U.S. Dist. LEXIS 21396 at *8-*10.

[7] *Frisk* noted that the BOP was not a party to the action. The BOP is a party to the case at bar (although it has not made a general appearance), and Plaintiff seeks $100,000 and injunctive relief against the BOP. See Doc. No. 5 at p.6. As noted above, the BOP enjoys immunity from suits for monetary and injunctive relief and is not a person under § 1983. See Jachetta, 653 F.3d at 908, 912. The Court cannot grant the relief requested against the BOP. See id.; see also Malesko, 534 U.S. at 71-72.

Because Plaintiff is not in imminent danger, and has three strikes, the Court will revoke Plaintiff's IFP status and dismiss this case without prejudice to refiling and paying the entire filing fee.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Consistent with the above analysis, the Court ADOPTS the Findings and Recommendation (Doc. No. 19), with respect to Plaintiff's motion to declare portions of 42 U.S.C. § 1915 unconstitutional;

2. Plaintiff's motion to declare portions of 42 U.S.C. § 1915 unconstitutional (Doc. No. 16) is DENIED;

3. The Court DECLINES to adopt the Findings and Recommendation (Doc. No. 19) with respect to Defendants' motion to revoke Plaintiff's in forma pauperis;

4. Defendants' motion to revoke Plaintiff's in forma pauperis status (Doc. No. 15) is GRANTED

5. The order granting Plaintiff's application to proceed in forma pauperis (Doc. No. 8) is VACATED;

6. In order to proceed with this lawsuit, Plaintiff must pay the $400.00 filing fee within fourteen (14) days of the date of service of this order; and

7. If Plaintiff fails to timely pay the $400.00 filing fee, the Court will dismiss this action without prejudice and without further notice.

IT IS SO ORDERED.

Dated:   September 8, 2015                                              
                                                 SENIOR  DISTRICT  JUDGE